UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Daniel M.,<br><br>    Plaintiff,<br><br>    v.<br><br>Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | Civil Action No. 2:21–cv–243 |

## OPINION AND ORDER
(Docs. 12, 14)

Plaintiff Daniel M. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits. Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 12), and the Commissioner's motion to affirm the same (Doc. 14). For the reasons stated below, Plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings and a new decision.

## Background

Plaintiff was forty-two years old on his alleged disability onset date of October 1, 2018. He graduated from high school and attended college for four years, obtaining a degree in criminal justice. (AR 636.) He worked for many years as a sales attendant for a family friend, and then for about a month as a cashier at a gas station convenience store. He has also worked as a volunteer firefighter. He is separated from his wife of four years and lives with his mother in South Hero, Vermont. (AR 632.)

Plaintiff suffers from posttraumatic stress disorder (PTSD), a depressive disorder, generalized anxiety disorder, a panic disorder, sleep problems, and occasional painful and swollen joints. His PTSD dates back to approximately thirty years ago, when as a teenager he found the body of his older teenage brother after his brother had committed suicide by a gunshot wound to the face/head. Two years later, Plaintiff discovered the body of his father hanging from the rafters of the family barn, another victim of suicide. Plaintiff was psychiatrically hospitalized after each of these traumatic events. (*See, e.g.*, AR 354, 630, 635.)

In June 2014, about twenty years after having witnessed the aftermath of his two family members' suicides, Plaintiff underwent therapy for suicidal ideation with intent and plan to hang himself or drive/jump off a cliff. (AR 328, 354.) Almost four years later, in February 2018, Plaintiff was hospitalized due to a four-day period of nausea, vomiting, low-grade fever, diarrhea, decreased appetite, difficulty sleeping, nightmares, and flashbacks. (AR 610.) Plaintiff was admitted to inpatient psychiatry on a voluntary basis due to worsening depression, anxiety, and suicidal ideation. (AR 630.) Plaintiff was discharged about a week later, his mood and anxiety improved and suicidal ideation resolved, with prescriptions for several medications including Seroquel. (AR 640–43.)

In September 2019, Plaintiff filed his application for Disability Insurance Benefits, stating that he stopped working on December 31, 2018 due to his PTSD and anxiety. (AR 188.) Plaintiff stated in a January 2020 Function Report that he was anxious "[g]oing out into groups of unfamiliar people" (AR 226), and he was isolating and keeping to himself (AR 231). He further stated that his medications made him sedated and drowsy such that he was unable to concentrate on anything for long periods. (AR 226.) Plaintiff's daily activities included watching television, coloring, caring for his cat, and doing household chores. (AR 227–28.) In a

May 2020 Function Report, Plaintiff noted similar limitations, adding that he tried to read but would lose focus. (AR 246.) He also reported that his mother had to remind him to shower, get out of bed, go outside for a walk, and "do something productive." (AR 247.) He stated that he did not like being around people and he preferred to keep to his daily routine. (AR 251.)

Plaintiff's disability application was denied initially and upon reconsideration, and he timely requested an administrative hearing. On November 24, 2020, Administrative Law Judge (ALJ) Matthew Levin conducted a hearing on the application. (AR 29–64.) Plaintiff appeared and testified, and was represented by counsel. A vocational expert (VE) also testified at the hearing. (AR 55–59.) On December 21, 2020, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from his alleged disability onset date of October 1, 2018 through the date of the decision. (AR 10–22.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–9.) Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on October 12, 2021. (Doc. 1.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d),

416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four. *Butts*, 388 F.3d at 383. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Levin first determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2018, his alleged disability onset date. (AR 12.) The ALJ noted that, although Plaintiff had worked after that date, "this work activity . . . [did] not rise to the level of substantial gainful activity." (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of PTSD and a depressive disorder. (AR 13.) In contrast, the ALJ found that Plaintiff's alleged rheumatoid arthritis was not a medically determinable impairment and that Plaintiff's "unspecified arthralgias" were "non-severe." (*Id.*)

4

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 13–15.)

Next, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels," but with the following nonexertional limitations:

> [Plaintiff] can understand and remember simple, 1-2 step tasks; maintain concentration, persistence, and pace for 2-hour blocks of time throughout an 8-hour workday and 40-hour workweek; and he retains the adaptive skills to deal with routine changes and safety concerns in the workplace.

(AR 15.) Relying on testimony from the VE, the ALJ found that Plaintiff's RFC rendered him capable of performing his past relevant work as a "Sales Attendant" (AR 21), "as [the job is] actually and generally performed" (AR 22). The ALJ concluded that Plaintiff had not been under a disability from the alleged disability onset date of October 1, 2018, through the date of the decision. (*Id.*)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v.*

*Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.

The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted); *see Sesa v. Colvin*, 629 F. App'x 30, 31 (2d Cir. 2015). Nonetheless, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's finding that he could return to his past relevant work as a sales attendant, given that the Dictionary of Occupational Titles (DOT)'s definition of the "Sales Attendant" job—*as generally performed*—requires a Reasoning Level of 3, whereas Plaintiff's RFC restricts him to a job involving only "simple, [one-to-two-]step tasks" (AR 15), which the DOT defines as a Reasoning Level of 1. (*See* Doc. 12-1 at 6–12; Doc. 12-2 at 1; Doc. 12-3 at 4–5.) The Commissioner does not refute this

argument,[1] but asserts that Plaintiff failed to demonstrate that the ALJ's decision is unsupported because Plaintiff has not addressed the ALJ's finding that Plaintiff could return to his past relevant work *as he actually performed it*. (*See* Doc. 14 at 1, 5–6.) According to the Commissioner, that finding is sufficient to find Plaintiff not disabled. (*Id.* at 5 (citing *Zokaitis v. Astrue*, Civil Action No. 1:10–CV–30, 2010 WL 5140576, at *1 (D. Vt. Oct. 28, 2010), *report and recommendation adopted*, 2010 WL 5140063 (D. Vt. Dec. 13, 2010), *aff'd sub nom. Zokaitis v. Soc. Sec. Admin.*, 465 F. App'x 17 (2d Cir. 2012).) Plaintiff responds that substantial evidence does not support the Commissioner's claim that Plaintiff could perform the sales attendant job as he actually performed it. (*See* Doc. 15 at 1.) Plaintiff contends that his performance of the job included tasks requiring more than one-to-two steps and a Reasoning Level of 3, which were beyond the ALJ's RFC determination for Plaintiff. (*Id.* at 2.)

At step four of the ALJ's sequential evaluation, the ALJ compares his or her RFC determination with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). "Past relevant work" is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the

---

[1] Given that the Commissioner has not opposed Plaintiff's argument that the Sales Attendant job, as defined in the DOT, requires a higher Reasoning Level than the Reasoning Level stated in the ALJ's RFC determination for Plaintiff, the Court accepts the argument as true for the purposes of this case. Furthermore, the argument is well supported in the case law. *See, e.g.*, *McGriff v. Colvin*, No. 3:16-CV-911 (JAM), 2017 WL 3142336, at *3 (D. Conn. July 25, 2017) (holding that Reasoning Levels 2 and 3 are not consistent with an RFC finding of a limitation to "simple, one-to-two step tasks," as that limitation "essentially tracks the limitations for [R]easoning Level [1] (the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions') rather than for [R]easoning Levels [2] or [3] (which impose no limitation on the number of steps or instructions that an employee must be able to follow)" (third alteration in original)); *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 560 (8th Cir. 2018) ("The court recognized that the ALJ's reference to '1 to 2 step tasks' corresponded to Level 1 Reasoning, creating an apparent conflict between the [VE's] testimony [identifying a Level 3 job] and the [DOT]."); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between [the plaintiff's] RFC, which limits her to performing one- and two-step tasks, and the demands of Level [2] reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'"); *Carpenter v. Colvin*, Case No. 1:13–cv–01637 (CKK/GMH), 2016 WL 946975, at *7 (D.D.C. Feb. 24, 2016) ("The ALJ's instruction that the hypothetical plaintiff was limited to 'simple, routine, repetitive, one to two step tasks' conflicts with DOT Reasoning Level [2], which is required for both jobs identified in the VE's testimony."), *report and recommendation adopted*, 2016 WL 953216 (Mar. 14, 2016).

claimant] to learn to do it." *Id.* § 404.1560(b)(1). If, based on that comparison, the claimant is able to perform his or her past relevant work, the ALJ will find that the claimant is "not disabled." *Id.* § 404.1520(f). The Second Circuit has explained that the ALJ's determination of a claimant's ability to perform his or her past relevant work "requires, at the very least, 'a careful appraisal of (1) the [claimant's] statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; [and] (2) medical evidence establishing how the impairment limits [the claimant's] ability to meet the physical and mental requirements of the work.'" *Abbott v. Colvin*, 596 F. App'x 21, 23 (2d Cir. 2015) (second alteration in original) (quoting SSR 82-62, 1982 WL 31386, at *3 (SSA 1982)).

The ALJ's inquiry at step four "requires separate evaluations of the previous specific job and the job as it is generally performed." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003); *see* SSR 82-62, 1982 WL 31386, at *3 (noting that past relevant work includes "*either* the specific job a claimant performed *or* the same kind of work as it is customarily performed throughout the economy" (emphases added)). It is the claimant's burden to show "an inability to return to [his or] her previous specific job *and* an inability to perform [his or] her past relevant work generally." *Jasinski*, 341 F.3d at 185 (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)). The regulations provide that the ALJ will deny benefits at Step Four if the claimant "can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). When evaluating the previous job the claimant *actually performed*, "[t]he claimant is the primary source for vocational documentation[;] and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands[,] and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3. When evaluating the previous job as *generally*

*performed*, the DOT is used. *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011). A VE "is often called upon to explain the requirements of particular jobs," but "step four of the analysis does not *require* that an ALJ consult an expert." *Id.* (internal quotation marks omitted).

The Commissioner is correct that a finding that Plaintiff could return to his previous job *as actually performed* is sufficient to support a finding of non-disability, and there is no requirement that the ALJ also find that Plaintiff could return to his job as generally performed. The Commissioner is also correct that, although ALJs are obligated to explore "apparent unresolved conflict[s]" between VE testimony and the DOT, *see, e.g.*, *Karen S. v. Comm'r of Soc. Sec.*, Case No. 2:18-CV-00099, 2020 WL 4670911, at *18 (D. Vt. Aug. 11, 2020) (internal quotation marks omitted), there is no similar obligation when a VE testifies to the *actual* requirements of a claimant's past relevant work, *see Jasinski*, 34 F.3d at 185 ("Whereas the [DOT] describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs, and as such, his deviations from the [DOT] in such testimony do not actually 'conflict' with the [DOT]. Many specific jobs differ from those jobs as they are generally performed, and the expert may identify those unique aspects without contradicting the [DOT]."). Therefore, the ALJ was not required to question the VE regarding her testimony that Plaintiff could return to his past relevant work as he actually performed it.

However, the ALJ should have, "at the very least," conducted "a careful appraisal" of (1) Plaintiff's statements as to which past work requirements can no longer be met and why they cannot be met, and (2) medical evidence establishing how Plaintiff's impairments limit his ability to meet the requirements of that work. *Abbott*, 596 F. App'x at 23 (internal quotation marks omitted). The Social Security Administration has explained the procedures for determining a claimant's capacity to do past relevant work. According to the Commissioner,

"[t]he decision as to whether the claimant retains the functional capacity to perform past work . . . *must be developed and explained fully in the disability decision*," and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL 31386, at *3 (emphasis added); *see Abbott*, 596 F. App'x at 23. For claims involving a mental impairment, "care must be taken to obtain a *precise description of the particular job duties which are likely to produce tension and anxiety*, e.g., speed, precision, *complexity of tasks*, independent judgments, working with other people, etc., . . . to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62, 1982 WL 31386, at *3 (emphases added). An ALJ's decision that a claimant has the capacity to perform a past relevant job "must contain" "[a] finding of fact as to the physical and mental demands of the past job/occupation." *Id.* at *4; *see Rebecca H. v. Comm'r of Soc. Sec.*, No. 6:20-CV-01058 (TWD), 2022 WL 293854, at *5 (N.D.N.Y. Feb. 1, 2022) ("When the ALJ finds that a plaintiff can perform her past relevant work, the decision must contain a *specific finding of fact* (1) as to plaintiff's RFC; (2) as to *the physical and mental demands of the past relevant work*; and (3) that plaintiff's RFC permits her to return to her past relevant work." (emphases added)); *Barrio v. Comm'r of Soc. Sec. Admin.*, 394 F. App'x 635, 637 (11th Cir. 2010) ("In determining if a claimant can return to her past relevant work, the ALJ must consider the specific duties of the claimant's past work and evaluate the claimant's ability to perform them in spite of her impairments.").

      In this case, the ALJ did not make a finding as to the physical and mental demands of Plaintiff's sales attendant job as Plaintiff actually performed it. Nor did the ALJ assess, or discuss at all in his decision, Plaintiff's ability to perform that job during the relevant period. The ALJ concluded that Plaintiff could do his past job as a sales attendant without discussing

10

either (a) the physical and mental requirements of that job, or (b) how Plaintiff's physical and mental impairments limited, if at all, his ability to perform those requirements. Although Plaintiff testified briefly at the administrative hearing about several specific tasks that he completed in his job as a sales attendant (*see* AR 40 (Plaintiff testifying that he would "grab . . . a pen," "put [something] . . . on [a] shelf," and "vacuum something")), the ALJ neither sought more detail about the job from Plaintiff nor asked the VE if, given those tasks, a hypothetical claimant with Plaintiff's RFC could perform the job. *See Deborah M. v. Kijakazi*, No. 1:20-CV-1600 (FJS), 2022 WL 2274780, at *11 (N.D.N.Y. June 23, 2022) (holding that, although ALJ is not *required* to consult a VE at step four, ALJ should have "question[ed] the VE about the expected amount of standing or walking required of an information clerk or service clerk both as a sedentary position as classified in the [DOT] and with an exertional level of light work as actually performed"). Further, the ALJ did not question Plaintiff about how he was limited from performing the requirements of the sales attendant job. Without the ALJ or counsel inquiring further about those requirements and limitations, the VE testified that a person with Plaintiff's RFC could do that job as it was actually performed. (AR 58–59.)

Specifically, Plaintiff testified at the administrative hearing that he worked at "G.R. Enterprises" for about twenty years. (AR 39.) He stated that the company was "very sympathetic" to him, such that he was "really basically working maybe [only] one or two days a week, maybe three" during the approximately twelve-to-eighteen-month period of time when he was receiving EMDR therapy. (*Id.*) Plaintiff explained that this employer was "a family friend" who was trying to help him "function and do something . . . within . . . a work parameter." (AR 40.) Plaintiff further testified that he "was monitored very heavily" by the employer, and that his job was to be the employer's "assistant" which entailed "you know, grab me a pen, can you put

11

this . . . on that shelf, . . . you can vacuum something," basically doing odd jobs, "like a parent would do to a child."[2] (*Id.*) There was no other relevant testimony at the administrative hearing about this job,[3] and, as noted above, the ALJ does not describe the job's requirements—as Plaintiff actually performed them—in his decision (*see* AR 25–26).

With respect to the VE, she testified at the administrative hearing that Plaintiff's past work consisted of "the position of Sales Attendant." (AR 58.) She cited the DOT job number for this job and explained that it is listed as "SVP2" and "light." (*Id.*) She noted that, "[a]ccording to the records on file," the job was "medium as performed." (*Id.*) After hearing the ALJ's first hypothetical—which included a limitation of understanding and remembering simple one-to-two-step tasks, among other things, but no limitation regarding staying-on-task—the VE testified that Plaintiff *could* do this past relevant work both as described in the DOT and as actually performed. (AR 58–59.)

Plaintiff's counsel then asked the ALJ to clarify the VE's response to this hypothetical, and the following colloquy ensued. Counsel stated that he had not heard the VE's response to the first hypothetical and asked if it was "no," meaning Plaintiff could *not* do his past work as a sales attendant. (AR 60.) The ALJ responded, "Yeah. No. So if an individual was off[-]task more than ten percent of a workday[,] they are unable to maintain any kind of full-time work." (*Id.*) Counsel clarified that he was asking about the *first* hypothetical, "with just the one[-]to[-

---

[2] Plaintiff's December 2019 Work History Report describes the job somewhat differently, indicating that Plaintiff would "place products and price items," "help maintain [the] store," "writ[e] . . . [and] complete reports," and "mov[e] products from shelf to customers or onto stock floor." (AR 195.) Likewise, a February 2020 Work History Report described the job as attending to the register, rotating and stocking shelves, and shoveling the walkway. (AR 235.) The ALJ's decision did not discuss these Reports, or the job duties described in the Reports.

[3] Plaintiff also testified at the administrative hearing about another job, as a cashier at a gas station convenience store. (AR 43–44.) But according to Plaintiff, that job lasted only "a few weeks, . . . maybe a month" (AR 43), because it required him to stop taking his medications (AR 44) and "run[] a cash register" (AR 45), which he could not do. The ALJ did not consider this job to be "substantial gainful activity" and thus it could not be considered past relevant work, and Plaintiff does not argue that it should have been considered as such.

12

]two[-]step limitation," i.e., the hypothetical that did not contain an "off-task" limitation. (*Id.*) The ALJ replied by repeating the hypothetical (the first one, as stated above), and counsel asked, "[w]as the answer to that, no?," to which the ALJ replied: "It was – that was with the hypothetical . . . , the one I said if they're off[-]task ten percent of the workday or more it was no, they couldn't do that job and if they were absent from work two or more times per month, no[,] they couldn't do that job or maintain any other job." (*Id.*) Counsel then rested.

This conversation is puzzling because Plaintiff's counsel was asking the ALJ about the VE's *first* hypothetical, which did not include the "off-task" limitation, and the VE had testified earlier in the hearing that Plaintiff *could* perform his past work under that first hypothetical, as generally and actually performed. But in this later discussion, the ALJ appears to have stated that the VE's testimony was that Plaintiff could *not* perform that work. (*Compare* AR 58–59 *with* 60.) Plaintiff's counsel claims that he "believed . . . the VE testified that [Plaintiff] would *not* be able to return to his former Sales Attendant job so there would be no need to cross-examine the VE on this issue." (Doc. 12-1 at 11 (emphasis added).)

The ALJ's written decision does not resolve the confusion reflected in the transcript of the administrative hearing. As noted, the decision does not discuss the specific duties of Plaintiff's past work as a sales attendant, and it does not evaluate Plaintiff's ability to perform those duties despite his impairments. At step four, the ALJ merely found that "[t]he claimant has past relevant work as a Sales Attendant (DOT 299.677-010), an unskilled position ([Specific Vocational Preparation Level] 2), generally performed at the light exertional level and medium as actually performed." (AR 21.) The ALJ further noted that, "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work, . . . the claimant is able to perform it as actually and generally performed." (AR 22.) Additionally, the ALJ noted the VE's testimony

13

that "an individual with the same age, education, work experience, and [RFC] as the claimant would be able to perform the claimant's past relevant work as actually and generally performed." (*Id.*) No additional facts or analysis are provided.

The Second Circuit has remanded to the Commissioner when the ALJ's analysis at step four was similarly limited:

> [B]ecause the ALJ's analysis on this point offers only passing mention of Abbott's identified nonexertional limitations, *we cannot determine whether the ALJ conducted the requisite careful appraisal of how Abbott's nonexertional limitations would or would not affect her ability to function as a teacher.* To be sure, in the fourth stage of the [Supplemental Security Income] inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. Yet the record here reveals that Abbott repeatedly emphasized the nonexertional demands associated with her past work as a teacher. Because the ALJ's step[-]four analysis leaves both these statements as well as Abbott's nonexertional limitations unaddressed, we remand for further consideration and explanation of whether Abbott, in light of her identified [RFC] and her description of her past work, could perform the work of a teacher.

*Abbott*, 596 F. App'x at 23–24 (citations and internal quotation marks omitted). Considering a similar situation, the Eleventh Circuit also has concluded that the ALJ's step-four analysis was inadequate in determining that plaintiff could return to past relevant work. "[T]he ALJ . . . failed to discuss the specific duties of [plaintiff's] former job as an assignment clerk and how or whether the RFC determination allowed her to do these tasks." *Barrio*, 394 F. App'x at 637. The court found that the ALJ's mere "comment[ing] that [the claimant] was able to fulfill the physical and mental demands of the work based in part on the claimant's own description of the work in her hearing testimony" was insufficient to support a conclusion that Plaintiff could return to her past relevant work. *Id.* (internal quotation marks omitted).

As in *Abbott* and *Barrio*, the ALJ in this case did not conduct the requisite "careful appraisal" of how Plaintiff's nonexertional limitations—particularly his limitation to understanding and remembering only "simple, [one-to-two-]step tasks"—would affect his ability

14

to function in his past relevant work as a sales attendant.  The Commissioner does not argue that the record supports a finding that Plaintiff could perform that job as he actually performed it.  This is likely because the record does not contain sufficient information to support that conclusion.  Remand to the Commissioner is therefore required to supplement the record and determine this issue.  *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record, . . . we will not hesitate to remand for further findings or a clearer explanation for the decision." (internal quotation marks omitted)).

The Commissioner asserts that Plaintiff has forfeited any argument about the ALJ's step-four "as actually performed" finding, by failing to address the issue (a) in his Motion seeking reversal of the ALJ's decision and (b) at the administrative hearing.  (Doc. 14 at 7–8.)  The Court disagrees.  Regarding Plaintiff's failure to make an "as actually performed" argument at the administrative hearing, this is an unusual case where the record demonstrates a misunderstanding—perhaps the result of conducting the hearing via telephone due to the COVID-19 pandemic—about the VE's hearing testimony regarding Plaintiff's ability to perform his past relevant work.  That misunderstanding resulted in Plaintiff's counsel declining to further question the VE on the topic at the hearing.  (*See* AR 58–60; *see also* Doc. 12-1 at 11 ("[I]t is clear from a review of the transcript that [Plaintiff's] representative believed that the VE testified that [Plaintiff] would *not* be able to return to his former Sales Attendant job so there would be no need to cross-examine the VE on this issue." (emphasis added)); *id.* n.5 ("[Plaintiff's attorney] had difficulty hearing the testimony of the VE (AR 60), and he asked the ALJ if the VE testified that [Plaintiff] could not return to work with the 1-2 step limitation[,] and the ALJ appeared to say 'it was[.]'  (AR 60).")  Moreover, in general, "[i]t is the rule in our circuit that the ALJ,

15

unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (alteration and omission in original) (internal quotation marks omitted); *see Jolley v. Saul*, No. 3:19-CV-0174 (JAM), 2020 WL 1502277, at *4 n.3 (D. Conn. Mar. 30, 2020) (rejecting Commissioner's argument that claimant "forfeited any attack on the completeness of the record" by virtue of claimant's counsel stating that the record was complete at the administrative hearing). As the ALJ did not properly develop the record and make findings on the issue of Plaintiff's past relevant work, remand is required.

Regarding Plaintiff's failure to focus his Motion on the ALJ's decision regarding his past relevant work as he "actually performed" it, as opposed to as it is "generally performed," the Court liberally reads the Motion together with Plaintiff's Reply to include both aspects of the ALJ's step-four decision that Plaintiff was capable of performing his past relevant work. This is appropriate in light of the longstanding principle that "the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz*, 646 F.2d at 773. Although generally "arguments . . . which are raised for the first time in a reply brief are deemed waived," *Blake v. Colvin*, Civil Action No. 2:14-cv-52-jmc, 2015 WL 3454736, at *6 (D. Vt. May 29, 2015) (citing *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010)), "[t]he district court has discretion to consider arguments made and evidence submitted for the first time in a reply brief," *Kingstown Cap. Mgmt., L.P. v. Vitek*, No. 20-3406, 2022 WL 3970920, at *1 (2d Cir. Sept. 1, 2022); *see Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) ("[T]he Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument." (emphasis omitted) (citing

*Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005))), *aff'd*, 374 F. App'x 71 (2d Cir. 2010).[4]

## Conclusion

For these reasons, the Court GRANTS Plaintiff's motion (Doc. 12), DENIES the Commissioner's motion (Doc. 14), and REMANDS for further proceedings and a new decision in accordance with this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 11th day of January 2023.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

---

[4] The court "generally do[es] not consider issues raised in a reply brief for the first time because if an appellant raises a new argument in a reply brief[,] an appellee may not have an adequate opportunity to respond to it." *In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006) (citation and internal quotation marks omitted). This rationale does not apply here, however, given the Commissioner's supposition in his Motion that Plaintiff would make the "as performed" argument in his Reply. (*See* Doc. 14 at 7.) Moreover, Plaintiff's Reply adds little new substance to his claims regarding the ALJ's alleged step-four error.